**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION**
IN ADMIRALTY

| | | |
|---|---|---|
| Evtor Shipping Inc., for itself and as claimant to the M/V SILVER RAY (IMO 9493133), *in rem*, | ) ) ) | |
| | ) | Civil Action No.: 2:25-cv-12410-RMG |
| Plaintiff, | ) ) | |
| | ) | **PLAINTIFF'S COMPLAINT** |
| v. | ) ) | |
| Brunswick Corp., and Correnti S.R.L., and Large Concept SARL | ) ) ) | |
| Defendants. | ) ) | |

Plaintiff, Evtor Shipping Inc, ("Evtor"), for itself and as claimant to the M/V SILVER RAY (IMO 9493133), *in rem*, complaining of Defendants, Brunswick Corp. ("Brunswick"), Correnti S.R.L. ("Correnti"), and Large Concept SARL ("Large Concept") (collectively the "Defendants"), shows this Honorable Court upon information and belief as follows:

## JURISDICTION

1. This case arises from a maritime collision ("Collision") in July 2024 involving the sailing yacht ACROBATICA (the "yacht") and the Vessel SILVER RAY (IMO 9493133) (the "Vessel") on the high seas during the SILVER RAY's voyage from Antwerp, Belgium to Charleston, South Carolina, USA.

2. This is an admiralty and maritime claim within the meaning of Rule 9(h) of the Federal Rules of Civil Procedure. Plaintiff invokes the Court's original admiralty jurisdiction pursuant to 28 U.S.C. § 1333(1).

3. Plaintiff seeks a declaration pursuant to 28 U.S.C. §§ 2201–2202 (the Declaratory Judgment Act) and Rule 57 of the Federal Rules of Civil Procedure that its Vessel, SILVER RAY, was not at fault in connection with the Collision.

4. In the alternative, this Court has diversity jurisdiction over its claim against Defendant Brunswick pursuant to 28 U.S.C. § 1332(a)(2).

5. Plaintiff Evtor is a Liberian corporation. Evtor is the registered owner of the Liberian flagged SILVER RAY.   THE SILVER RAY is 142-meter chemical tanker.

6. Defendant Brunswick is a Delaware Corporation.  Brunswick, through its Navico division B&G, is engaged in the design, manufacture, and sale of marine navigation systems, including the radar and related systems installed on the ACROBATICA at all relevant times. Brunswick maintains a resident agent in this District. Specifically, United Agent Group Inc. in North Charleston, South Carolina 29406.

7. Defendant Correnti is an Italian S.R.L. company with a registered office of Via Filippo Turati 29 Milano, Milano, 20121 Italy.  It is the beneficial owner of ACROBATICA.  The ACROBATICA is a Class40 monohull racing vessel that has a length of 40 feet and beam of about 14.8 feet.

8. Defendant Large Concept is a French SARL company with a registered office at 46 Rue de la Bergerie, 56700 Hennebont, France.  It is the registered owner of the ACROBATICA.

9. The Court has supplemental or pendent jurisdiction over Plaintiff's claims against Defendants Correnti and Large Concept because those claims arise from the same nucleus of operative facts as Plaintiff's admiralty claim against Brunswick.

10. Defendants Correnti and Large Concept filed a vessel attachment petition in the District Court of Rotterdam, Netherlands.  Defendants Correnti and Large Concept alleged SILVER

RAY was at fault and caused damage to ACROBATICA.  Plaintiff denies SILVER RAY was negligent, at fault, or in any way legally responsible for the collision.

11. In response, Plaintiff's insurer issued – and Defendants Correnti and Large Concept accepted - a Rotterdam Guarantee Form 2009 (a.k.a. Letter of Undertaking or LOU, herein "LOU") to provide security for, "a claim cause by or in connection with a collision between the sailing yacht ACROBATICA and the Vessel SILVER RAY … on or around 9 July 2024."  The LOU is governed by the law of Netherlands and is a treated as a contract under Book 6 of the Dutch Civil Code.

12. In the LOU, the parties agreed related litigation could be filed in any competent jurisdiction Specifically:

***The undersigned and the Creditor submit to the non-exclusive jurisdiction*** *of the competent court of law in Rotterdam for disputes and claims in respect of this guarantee.*

(emphasis added).   The LOU does not bind the parties to Dutch jurisdiction.  This Court is a court of competent jurisdiction.  Defendants Correnti and Large Concept's consent to the non-exclusive jurisdiction clause in the LOU is sufficient to confer personal jurisdiction in this Court. Further, Defendants Correnti and Large Concept have not taken any action to proceed against the LOU, or Plaintiff, in any jurisdiction.

13. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b), because the Vessel was enroute to Charleston, South Carolina at the time of the collision, and its first port of call after the collision was Charleston, South Carolina.

14. When Defendants Correnti and Large Concept accepted the LOU, it was foreseeable that Plaintiff would exercise jurisdiction in this United States District Court –SILVER RAY's destination and first port of call after the Collision and where ACROBATICA's marine navigation system manufacturer is present.

## FACTS

15. On 9 July 2024, ACROBATICA contacted SILVER RAY on SILVER RAY's starboard beam causing physical hull damage to SILVER RAY. (again, herein the "Collision").

16. SILVER RAY was enroute from Antwerp, Belgium to Charleston, South Carolina, USA with a cargo of paraxylene. The ACROBATICA was participating in a regatta/race from Quebec, Canada to Saint-Malo, France known as the "Transat Québec–Saint-Malo" when the Collision occurred.

17. Alberto Riva was the master of the ACROBATICA.

18. The navigational equipment aboard the ACROBATICA included a B&G marine navigation system. *See https://www.bandg.com/en-au/ready-for-anything/alberto-riva/?srsltid=AfmBOoomlwzzWbCzpDMKYlbqcoAL8PEHP4EK-34KL2tK6OSkpzfnzjXB ; last visited on* September 2, 2025.

19. B&G markets its products as, "Ready for Anything." *Id.*

20. Video on B&G's website posted from YouTube (available at https://www.youtube.com/watch?time_continue=34&v=5CCCp9PH2bw&embeds_referring_euri=https%3A%2F%2Fwww.bandg.com%2F&source_ve_path=MzY4NDIsMzY4NDIsMzY4NDIsMjg2NjY ; last visited on September 2, 2025) contains video footage of ACROBATICA and statements of Alberto Riva. Alberto Riva details the importance of onboard marine navigation electronics. The video imagery – a still screenshot depicted below - appears to show a B&G radar onboard the ACROBATICA. (Circle added for reference).



21. Further, the B&G website details "Alberto's B&G system," as including a "Zeus S," a "Nemesis Display," a "Halo Radar 20+," and a "Triton Edge."



https://www.bandg.com/en-au/ready-for-anything/alberto-riva/?srsltid=AfmBOoomlwzzWbCzpDMKYlbqcoAL8PEHP4EK-34KL2tK6OSkpzfnzjXB.

22.  The B&G website details the "Zeus S" as its "most intuitive chartplotter … designed specifically to [give the user] all the information [the user[ need[s] in an easy-to- interpret

way."), and advertises "C-MAP® powered Safety Alerts guard against grounding and dangerous objects." *See* https://www.bandg.com/en-au/zeus-s/ ; last visited on September 2, 2025.

23. The B&G website further describes the "Halo Radar 20+," as delivering, "an almost real-time view, with industry-leading 60 RPM operation at close range **for the ultimate in collision avoidance** ." *see* https://www.bandg.com/en-au/bg/type/radar/halo20bgradar-ff03e156/ ; last visited September 2, 2025 (emphasis added).

24. The "Triton Edge" is explained on B&G's website as:

> Triton™ Edge Sailing Processor delivers an enhanced suite of sailing data such as advanced Start line calculations, advance true wind data and autocalibration, boat speed calibration and correction, wind correction for heel/trim, support for polar tables, **improving accuracy of your autopilot** and sailing information. Wi-Fi and Ethernet allows for expanded integration with Triton 2 and Nemesis™ displays, and Vulcan and Zeus™ Chartplotters, whilst integration with the B&G App also enables the ability to review or replay your sailing data, and web-browser based control allows for easy set-up and commissioning, improving the accuracy and calibration of sailing data, as well as the ability to backup/restore and advanced diagnostics

*See* https://www.bandg.com/en-au/bg/type/instruments/sailing-processors/triton-edge-sailing-processors/ ; last visited September 2, 2025.

25. ACROBATICA's autopilot was on at the time of the collision. ACROBATICA's crew relied upon the ACROBATICA's electronic navigation system.

26. ACROBATICA's electronic navigation system did not report any ship approaching ACROBATICA. *Id.*

27. SILVER RAY's crew observed the ACROBATICA operating in an erratic pattern. ACROBATICA did not keep her course and speed.

28. Immediately prior to the collision, ACROBATICA maneuvered in an uncontrolled manner, abruptly and unexpectedly turning to starboard and directly into SILVER RAY.

29. ACROBATICA's B&G marine navigation suite, to include its radar, autopilot, and other warning system, did not operate as designed.

30. Failure of the marine navigation system aboard ACROBATICA, specifically the marine navigation system manufactured by Defendant Brunswick through its Navico division doing business as B&G, caused the collision.

31. Further, there was no lookout or other personnel on ACROBATICA's deck, or otherwise, prior to the collisions.

32. ACROBATICA's crew did not hear SILVER RAY's sound signal/horn, despite it being sounded.

33. ACROBATICA's master further admitted after the collision to SILVER RAY's crew that the ACROBATICA's crew was distracted by a leaking ballast tank, and that ACROBATICA's crew did not see the SILVER RAY before the collision or hear SILVER RAY'S horn.

34. The Convention on the International Regulations for Preventing Collisions at Sea ("COLREGS") applies.

35. Defendants Correnti and Large Concept admitted that the Convention on the International Regulations for Preventing Collisions at Sea ("COLREGS") applies in its previous vessel attachment application.

36. ACROBATICA violated Rules 2 (Responsibility), 5 (Look-out), 6 (Safe Speed), 7 (Risk of Collision),  8 (Action to Avoid Collision), 17 (Action by Stand-on Vessel), and 34 (Maneuvering and Warning Signals) of the COLREGS by failing to maintain a proper lookout, operate at a safe speed, take all necessary measures to avoid the collision, and otherwise operate in accordance with the COLREGS.

37. The ACROBATICA is at fault for the collision.

38. SILVER RAY complied with the "COLREGs" and with all duties of prudent seamanship.

39. Despite ACROBATICA remaining afloat, the crew abandoned the ACROBATICA.

40. ACROBATICA's crew failed to preserve any voyage data recorder ("VDR") data and other relevant navigation data prior to departing the vessel.

41. ACROBATICA's crew did not take steps to facilitate towing – or subsequent recovery- of the ACROBATICA.

42. SILVER RAY recovered 3-crew members from ACROBATICA. Maritime Rescue Coordination Center ("MRCC")-Lisboa directed SILVER RAY to divert to St. Flores Island (Azores Island) where ACROBATICA's crew disembarked SILVER RAY.

43. SILVER RAY suffered damages, costs and delay, in transporting the ACROBATICA's crew to St. Flores Island.

44. The ACROBATICA came ashore on a beach in El Ouatia, located in the Tan-Tan region of Morocco.

45. Defendants Correnti and Large Concept failed to take steps to preserve relevant evidence onboard the ACROBATICA despite repeated demands and requests. Specifically, ACROBATICA was stripped of its navigation equipment and set on fire.

46. Any and all loss or damage suffered by Defendants Correnti and Large Concept arose from the acts, omissions, or fault of the ACROBATICA for which Defendants Correnti and Large and/or Defendant Brunswick are responsible.

47. An actual controversy exists between the parties concerning liability for the Collision. Plaintiff is entitled to a declaration of its rights and obligations.

## COUNT I (Declaratory Judgment)
### [Defendants Correnti and Large Concept]

48. Plaintiff repeat and re-allege each and every allegation hereinabove set forth, with the same force and effect as if herein repeated and set forth at length.

49. Pursuant to 28 U.S.C. § 2201, Plaintiff seeks a declaratory judgment that:

    a. Plaintiff and SILVER RAY were not at fault for the Collision.

    b. Plaintiff bears no liability for damage, loss, or injury allegedly sustained by Defendants Correnti and Large Concept in connection with the Collision;

    c. Defendant Brunswick, and/or Defendants Correnti and Large Concept are responsible for Defendants Correnti and Large Concept's alleged damages, if any.

## COUNT II (NEGLIGENCE AND MARITIME TORT)
### [Defendants Correnti and Large Concept]

50. Plaintiff repeats and re-alleges each and every allegation hereinabove set forth, with the same force and effect as if herein repeated and set forth at length.

51. On or about July 9, 2024, SILVER RAY was lawfully navigating in international waters, in compliance with the COLREGS.

52. ACROBATICA, and Defendants Correnti and Large Concept, through its agents, servants, and crew, negligently and unlawfully relied upon a defective, inoperable, or inadequate B&G marine navigation system.

53. ACROBATICA, and Defendants Correnti and Large Concept, through its agents, servants, and crew, further, negligently and unlawfully failed to keep clear of the SILVER RAY as required by the COLREGs, including but not limited to Rules 2 (Responsibility), 5 (Look-out), 6 (Safe Speed), 7 (Risk of Collision),  8(Action to Avoid Collision), 17 (Action by Stand-on Vessel), and 34 (Maneuvering and Warning Signals) by:

a.  Failing to take timely and substantial action to avoid collision;

b.  Failing to maintain its course and speed.

c.  Engaging in unorthodox or unpredictable maneuvers inconsistent with safe navigation in the vicinity of commercial shipping traffic;

d.  Failing to keep a proper lookout;

e.  Failing to operate at a safe speed;

f.   Failing to operate in accordance with the COLREGS; and

g.  Failing to exercise reasonable care under the circumstances.

54. As a direct and proximate result of Defendant's negligence, the ACROBATICA collided with the SILVER RAY, causing physical damage to the SILVER RAY.

55. As a further direct and proximate result of said collision, the SILVER RAY was delayed in her voyage, causing Plaintiff to incur losses including but not limited to:

a.  Costs of repairs and related costs;

b.  Loss of Time;

c.   Bunker costs;

d.  UWI, Class, agency, attendance and other costs.

56. Plaintiff has sustained damages greater than $75,000 and, in an amount, to be proven at trial.

**COUNT III (STRICT PRODUCTS LIABILITY)**
**[Defendant Brunswick]**

57. Plaintiff repeats and re-alleges each and every allegation hereinabove set forth, with the same force and effect as if herein repeated and set forth at length.

58. Defendant Brunswick designed, manufactured, and sold the marine navigation systems, including the radar and related systems, aboard ACROBATICA in a defective and unreasonably dangerous condition.

59. The marine navigation system, including the radar and related systems, aboard ACROBATICA was unfit for its intended maritime use, including close-range detection and collision avoidance, and reached the ACROBATICA without substantial change from its manufactured condition.

60. Brunswick knew or should have known that its marine navigation system would be relied upon by vessel owners and operators for safe navigation, and that defects in that system would create a foreseeable risk of collision and maritime loss to other vessels – including Plaintiff's- operating on the high seas.

61. The defective marine navigation system onboard ACROBATICA was a proximate cause of the collision and Plaintiff's resulting damage.

### COUNT IV (NEGLIGENCE AND MARITIME TORT)
### [Defendant Brunswick]

62. Plaintiff repeats and re-alleges each and every allegation hereinabove set forth, with the same force and effect as if herein repeated and set forth at length.

63. Brunswick had a duty to a duty to design and manufacture marine navigation systems – to include a radar and related systems - that was reasonably safe, fit for its intended purpose, and free from defects likely to cause injury or damage in foreseeable use.

64. Defendant breached that duty by negligently designing, manufacturing, and placing into the stream of commerce a marine navigation system – to include a to include a radar and related systems - that was defective, unsafe, and unfit for use on the oceangoing ACROBATICA.

65. Brunswick knew or should have known that its radar equipment would be relied upon by vessel owners and operators for safe navigation, and that defects in design would create a foreseeable risk of collision and maritime loss to other vessels – including Plaintiff's-operating on the high seas.

66. As a direct and proximate result of Defendant's negligence, Plaintiff's Vessel was damaged, Plaintiff's commercial operations were delayed, and Plaintiff suffered economic losses in an amount to be determined at trial.

## COUNT V (INDEMNITY AND/OR CONTRIBUTION)
### [Defendant Brunswick]

67. Plaintiff repeats and re-alleges each and every allegation hereinabove set forth, with the same force and effect as if herein repeated and set forth at length.

68. The Collision was caused in whole or in part by the acts, omissions, fault, negligence, gross negligence, and/or design or manufacturing defects of Brunswick.

69. To the extent Plaintiff may be held liable to Defendants Correnti and/or Large Concept and/or certain other third parties, whether by judgment or settlement, Plaintiffs are entitled to indemnity and/or contribution from Brunswick.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully prays that this Court:

A. Assume jurisdiction over this action;

B. Declare, pursuant to 28 U.S.C. § 2201, that Plaintiff Evtor Shipping Inc and its Vessel SILVER RAY are not at fault for the July 2024 Collision with ACROBATICA;

C. Declare that Plaintiff bears no liability to Defendant arising out of the Collision;

D.  Award Plaintiff its damages for physical damage to the SILVER RAY and losses associated with the delay to recover and bring ACROBATICA's crew members to a safe harbor in an amount to be determined at trial;

E.  In the alternative, for contribution and/or indemnity from Defendant Brunswick for any losses suffered by Defendants Correnti and Large Concept to the extent Plaintiff is held liable to said Defendants;

F.  Award Plaintiff its costs and expenses, as may be allowed by law; and

G.  Grant such other and further relief as the Court deems just and proper.

Respectfully submitted,


By: s/Julius H. Hines
Julius Hines, SC Bar No. 5807
Ryan Gilsenan, Fed ID. 9837
Edward N. Smith, SC Bar No. 13429
Hines & Gilsenan, LLC
1535 Hobby Street, Suite 203D
Charleston Navy Yard
North Charleston, South Carolina 29405
T: 843-847-8003
*E: gilsenan@hinesandgilsenan.com*
E:*hines@hinesandgilsenan.com*
E: *smith@hinesandgilsenan.com*

J. Stephen Simms (*pro hac vice* application forthcoming)
Gary C. Murphy (*pro hac vice* application forthcoming)
Simms Showers LLP
201 International Circle, Suite 230
Baltimore, Maryland 21030
Telephone: 410-783-5795
jssimms@simmsshowers.com


September 9, 2025
Charleston, South Carolina